UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| REV. FRANKLIN C. REAVES, PH.D., et al., | ) ) ) Civil Action No.: 4:07-1487-TLW-TER |
| Plaintiffs, | ) ) ) |
| -vs- | ) **REPORT AND RECOMMENDATION** ) ) |
| CITY OF MULLINS, et al., | ) ) ) |
| Defendants. | ) ) |

## I. INTRODUCTION

Plaintiffs, who are proceeding pro se in this action, assert numerous claims alleging numerous wrongs in relation to the alleged condemnation of property located in the City of Mullins, County of Marion, South Carolina. Presently before the Court are three motions: 1) Defendants Marion County, Edwin P Rogers, K Donald Fling, John Q Atkinson, Eloise W Rogers, Tom Shaw, Allen Floyd, Milton Troy, Pearly Britt, and Elista H Smith's (the Marion Defendants) Motion for Summary Judgment (Document # 105), 2) Defendants City of Mullins, W Kenneth McDonald, Terry B Strickland, Jo A Sanders, James W Armstrong, Patricia A Phillips, D Wayne Collins, Daniel B Shelley, Jr, George Hardwick, Russell Bass, and Vickie Nichols' (the Mullins Defendants) Motion for Summary Judgment (Document # 106) and 3) Plaintiffs' Motion to Dismiss (Document # 117).

All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(e), DSC. This Report and Recommendation is entered for review by the District Judge.

## II. RELEVANT FACTS

At all times relevant to the Complaint, defendant Donald Fling was employed with the Marion County (South Carolina) Codes Enforcement Office. Affidavit of Donald Fling ¶ 2; Affidavit of Edwin P. Rogers, Jr. ¶ 3. The Codes Enforcement Office is charged with the responsibility of enforcing various County codes and ordinances. Fling Aff. ¶ 2; Rogers Aff. ¶ 3. In particular, the Codes Enforcement Office is responsible for executing the County nuisance ordinance which entails, in part, condemning properties which are unfit for human habitation, pose an unreasonable fire or other risk to human health and safety, or otherwise present a nuisance. Marion County Nuisance Ordinance; Fling Aff. ¶¶ 2-3; Rogers Aff. ¶¶ 3, 5. Given that the City of Mullins lacked an enforcement official and proper equipment to condemn and clear nuisance structures, the County of Marion agreed to perform condemnations for the City of Mullins. Rogers Aff. ¶ 4.

In early summer of 2006, Fling was notified that there were several nuisance properties located on North Smith Street in Mullins, South Carolina. Fling Aff. ¶ 7. In accordance with standard practice, he responded to the complaints and conducted visual inspections of the properties to determine whether they, in fact, constituted nuisances per the ordinance. Id. ¶¶ 4-8. While there he observed multiple abandoned and uninhabited properties which were in extreme states of disrepair and which presented obvious health and safety hazards: the buildings had collapsed roofs, broken windows, the rotten wood siding and structures, etc., and the lots and structures were overgrown with weeds and vines, littered with debris, etc. Id. ¶¶ 7-8.

While there Fling observed one property–later identified as Tax Map Parcel Number 421-2-14 (a/k/a 908 North Smith Street, although there was no street number displayed on the

structure) – in a similar, if not worse, state of disrepair: the roof was at least partially collapsed, the front porch was sunken, the wood siding and supports were rotten, there was gang graffiti painted on the front of the house, the structure itself was substantially overgrown by plants, weeds and vines, and the house appeared to have been long abandoned. Id. ¶¶ 8-9; Fling Aff. ex. A (photographs of house). To Fling, the subject property clearly met the definition of a nuisance as defined under Marion County Ordinance and South Carolina law. Id.

Following his visual inspection of the North Smith Street properties, Fling reviewed county tax records to ascertain the identities of the property owners so as to begin condemnation proceedings. Id. ¶ 11. Since there were no street numbers on any of the nuisance properties, and few street numbers on any other North Smith Street houses in that block, Fling found it very difficult to identify the correct addresses for the properties. Id. This process was made only more difficult because there are two different tax maps covering the same length of North Smith Street: one side of the street is covered by Tax Map 421 and the other side of the street is covered by Tax Map 419. Id.; see also Rogers Aff. ¶ 7. When Fling requested from the tax assessor's office the appropriate tax map covering the properties he had inspected, he was given Tax Map 419 erroneously. Fling Aff. ¶¶ 11-12. Upon reviewing Tax Map 419, Fling mistakenly concluded that the subject property was actually 904 North Smith Street (Tax Map Parcel Number 419-02-14) owned by Mr. Robert Dall Wallace, Jr. Id. ¶¶ 12-13. He, therefore, sent the notice of condemnation for the subject property to Mr. Wallace. Id. ¶¶ 12-13; Fling Aff. ex. B (letter of condemnation). This, it turns out, was in error as it was later discovered that the correct address for the subject property is actually 908 North Smith Street (Tax Map Parcel Number 421-02-14) owned by the plaintiff Vastena Reaves. Id.; see also Rogers Aff. ¶ 7.

The notice of condemnation, albeit directed to the wrong individual, advised that the subject property constituted a nuisance and was being condemned. Fling Aff. ¶ 13; Fling Aff. ex. B (letter of condemnation). The notice also advised that the condemnation could be appealed, and that if the property was cleared it would be done at the County's expense. Id. In addition to mailing notice to Mr. Wallace, Fling also posted a notice of condemnation in a conspicuous place on the house at 908 North Smith Street – right next to the front door at eye-level. Id. ¶ 15; Fling Aff. ex. A (photographs of house).

Fling subsequently received a note from Mrs. Kathy Wallace stating that the subject property did not belong to them. Id. ¶ 14; Fling Aff. ex. C (letter from Kathy Wallace). Still believing that the address of the subject property was 904 North Smith Street (Tax Map Parcel Number 419-2-14), Fling confirmed that Mr. Wallace was, in fact, the record owner of the property, and concluded that he had provided notice to the correct individual. Id.

After several months passed and nothing was done to remedy the nuisance or appeal the condemnation, the subject property was cleared at the County's expense. Id. ¶ 16. No personal property was found at or taken from the subject property. Id. ¶¶ 10, 18-19.

## III. STANDARD OF REVIEW

The moving party bears the burden of showing that summary judgment is proper. Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Rule 56(c), FRCP; Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Summary judgment is proper if the non-moving party fails to establish an essential element of any cause of action upon which the non-moving party has the burden of proof. Celotex, 477 U.S. 317. Once the moving party has brought into question whether there is a genuine issue for trial on a

material element of the non-moving party's claims, the non-moving party bears the burden of coming forward with specific facts which show a genuine issue for trial. Fed.R.Civ.P. 56(e); Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986). The non-moving party must come forward with enough evidence, beyond a mere scintilla, upon which the fact finder could reasonably find for it. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The facts and inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991). However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. Barber v. Hosp. Corp. of Am., 977 F.2d 874-75 (4th Cir. 1992). The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." Mitchell v. Data General Corp., 12 F.3d 1310, 1316 (4th Cir. 1993).

Rule 56(e) provides, "when a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." See also Celotex, 477 U.S. at 324 (Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves). To raise a genuine issue of material fact, a party may not rest upon the mere allegations or denials of his pleadings. Rather, the party must present evidence supporting his or her position through "depositions, answers to interrogatories, and admissions on file, together with ... affidavits, if any." Id. at 322. See also Cray Communications, Inc. v. Novatel Computer Systems, Inc., 33 F.3d 390 (4th Cir. 1994); Orsi v. Kickwood, 999 F.2d 86 (4th Cir. 1993); Local Rules 7.04, 7.05, D.S.C.

## IV. DISCUSSION

### A. Defendants' Motions for Summary Judgment

#### 1. 42 U.S.C. § 1983

Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Albright v. Oliver, 510 U.S. 266, 271, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994), quoting Baker v. McCollan, 443 U.S. 137, 144, n. 3, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979). A legal action under § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." City of Monterey v. Del Monte Dunes at Monterey, Ltd., 526 U.S. 687, 707, 119 S.Ct. 1624, 143 L.Ed.2d 882 (1999). To be successful on a claim under § 1983, a plaintiff must establish two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. West v. Atkins, 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988).

Plaintiffs first allege that Defendants searched and seized their property in violation of the Fourth Amendment. The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures." U.S. Const. amend. IV. The Fourth Amendment protects property for which an individual maintains a "subjective expectation of privacy that society recognizes as reasonable." Kyllo v. United States, 533 U.S. 27, 33, 121 S.Ct. 2038, 150 L.Ed.2d 94 (2001). A person who voluntarily abandons his property "loses any reasonable expectation of privacy in the property and is consequently precluded from seeking to suppress evidence seized from the property." United States v. Leshuk, 65 F.3d 1105, 1111 (4th Cir.1995). The proper test for abandonment is "'not whether all formal property rights have been

relinquished, but whether the complaining party retains a reasonable expectation of privacy in the [property] alleged to be abandoned.' " United States v. Stevenson, 396 F.3d 538, 546 (4th Cir.2005) (quoting United States v. Haynie, 637 F.2d 227, 237 (4th Cir.1980)). Determining whether the complaining party retains a reasonable expectation of privacy must be made from the totality of the circumstances. United States v. Ramapuram, 632 F.2d 1149, 1153 (4th Cir. 1980).

Plaintiffs did not live in or otherwise occupy the structure at issue. The building was in a dilapidated state, to the point that it had to be condemned because they presented an obvious risk to human safety. The roof had collapsed and a significant portion of the structure was open to the elements. The lot was overgrown with weeds, vines, and plants, appearing as if it had not been tended to in some time. It appeared that the structure was uninhabitable. Given the totality of the circumstances, Plaintiffs retained no reasonable expectation of privacy in the subject property. The touchstone of the Fourth Amendment is reasonableness. Pennsylvania v. Mimms, 434 U.S. 106, 108-09 (1977) ("the touchstone of our analysis under the Fourth Amendment is always 'the reasonableness in all the circumstances of a particular governmental intrusion of a citizen's personal security'" (quoting Terry v. Ohio, 392 U.S. 1, 19 (1968)); Florida v. Jimeno, 500 U.S. 248, 250 (1991) ("the textual touchstone of the Fourth Amendment is reasonableness"); Wyman v. James, 400 U.S. 309, 317-18 (1971) (only unreasonable government encounters proscribed by the Fourth Amendment). Thus, Plaintiffs claims of a Fourth Amendment violation are without merit.

Plaintiffs also allege that Defendants violated their due process rights guaranteed by the Fourteenth Amendment by failing to notify them of the condemnation prior to demolishing the subject property. The Fourth Circuit has held that a federal district court should deny § 1983 relief if state law provides a Plaintiff with a viable remedy for the loss of personal property. Yates v. Jamison, 782 F.2d 1182, 1183-84 (4th Cir.1986). Yates involves facts strikingly similar to those in the case at hand. In

Yates, the defendant, who was the Superintendent of Building Inspection for the city of Charlotte, or one of his agents, inspected a house owned by the plaintiffs and found it to be unfit for human habitation. Id. at 1183. A local ordinance directed the defendant to demolish the house and remove the debris. Id. Without notifying the plaintiffs of the pending demolition, the defendant and his agents demolished the house. Id. The plaintiffs in Yates brought a § 1983 claim, alleging in their complaint that the defendant's failure to provide notice was the result of the willful and reckless negligence of the defendant in failing to search the public records adequately to ascertain the plaintiffs' correct address while acting in their official capacities as agents of the City of Charlotte. Id. at 1183-84.

The Fourth Circuit held that the plaintiffs' § 1983 claims were barred pursuant to the Supreme Court's holding in Parratt v. Taylor, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). The court explained Parratt and its progeny as follows:

> In Parratt the Supreme Court held that a state official's random and unauthorized negligent act which caused the loss of a prisoner's personal property was not a violation of due process because the state provided a meaningful postdeprivation remedy. Similarly, in Palmer v. Hudson, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984), the Supreme Court held that Parratt's holding includes the intentional destruction of a prisoner's property by a random and unauthorized act, provided the state makes available a meaningful postdeprivation remedy. Thus, Parratt and Palmer established the rule that a government official's random and unauthorized act, whether intentional or negligent, which causes the loss of private property is not a violation of procedural due process when the state provides a meaningful postdeprivation remedy. The rationale is that because the wrongful act is not sanctioned by any established procedure, and because state law provides a means for the plaintiff to be made whole for his loss occasioned by the wrongful act, there has been no denial of procedural due process because the state action is not necessarily complete until the termination of the state's postdeprivation remedy.

Yates, 782 F.2d at 1184. The Yates court found that, because the plaintiffs alleged[1] that their house was destroyed without notice due to the negligence of the defendant and not by operation of statute or

---

[1] Yates involved a motion to dismiss rather than a motion for summary judgment.

-8-

ordinance, and because the plaintiffs possessed an adequate and meaningful postdeprivation remedy in the form of an action in state court for inverse condemnation, the claim fell within the rule of Parratt v. Taylor. Id. at 1185.

In the present case, the evidence presented reveals that the failure to notify Plaintiffs of the condemnation prior to demolishing the property was a result of the negligence of Fling in reading the tax assessor's records and not a result of established procedure or policy. In fact, the established law is that property owners must be afforded notice and an opportunity to be heard, See Marion County Ordinance 02-06 § 105 (attached as Ex. 1 to the Marion Defendants' Motion); S.C. Code Ann. §§ 31-15-60 & 31-15-70; S.C. Code Ann. §§ 31-15-360 & 31-15-370, and Fling attempted to comply with that law by providing notice to the person he thought was the owner of the subject property.

Additionally, like in Yates, South Carolina recognizes a cause of action for inverse condemnation. City of Hartsville v. South Carolina Mun. Ins. & Risk Financing Fund, 677 S.E.2d 574, 579, 382 S.C. 535 (2009) (citing Byrd v. City of Hartsville, 365 S.C. 650, 657, 620 S.E.2d 76, 79-80 (2005)) ("The elements of an inverse condemnation are (1) affirmative conduct of a governmental entity, and (2) a taking."). South Carolina also provides a cause of action under the South Carolina Tort Claims Act relating to the loss of personal property. South Carolina Code Ann. § 15-78-30 and its subparts encompass a "loss" of property from an occurrence of negligence proximately caused by a person employed by the State of South Carolina, a state agency, or political subdivision while acting within the scope of his or her employment. Suits brought under the South Carolina Tort Claims Act must be brought in a state court within the boundaries of South Carolina. See S.C.Code § 15- 78-20(e)(providing that the State of South Carolina does not waive Eleventh Amendment immunity, consents to suit only in a court of the State of South Carolina, and does not consent to suit in a federal court or in a court of another State).

Accordingly, because Fling's failure to notify Plaintiffs was due to his negligence and the state provides adequate post-depravation remedies, Plaintiffs' have failed to establish a Fourteenth Amendment violation. Additionally, because Plaintiffs cannot show a violation of either the Fourth or the Fourteenth Amendments, they cannot maintain a claim under § 1983.

### 2. 42 U.S.C. § 1985

Plaintiffs assert claims of conspiracy under § 1985. To establish such a claim, a plaintiff must prove, by specific evidence, a conspiracy of two or more people motivated by discriminatory animus to deprive a plaintiff of equal rights which results in injury to the plaintiff as the result of an overt act committed in furtherance of the conspiracy. Simmons v. Poe, 47 F.3d 1370, 1376 (4th Cir. 1995). The conspiracy must be proved by concrete facts, not mere allegations. Id. at 1376-77.

Plaintiffs assert that the agreement between the City of Mullins and Marion County to allow Marion County to handle condemnations within Mullins city limits establishes the existence of a conspiracy. However, Plaintiffs have failed to present sufficient evidence to establish that the purpose of the agreement was to deprive Plaintiffs of their equal protection of the laws. Thus, their § 1985 claims cannot withstand summary judgment.

### 3. The Civil Rights Act of 1964 and 1965

It is not exactly clear what claims Plaintiffs are asserting under the Civil Rights Act. Plaintiffs allege that Defendants discriminated against them because of their race by "taking Tax Map Numbers of white property owners in Marion County and applying them to African American property owners in the City of Mullins." Complaint at ¶ 104. Regardless of the type of claim Plaintiffs are attempting to assert, they have failed to present sufficient evidence to support this allegation. Therefore, Plaintiffs' claims under the Civil Rights Act fail.

#### 4. Plaintiffs' Remaining Claims

Plaintiffs' remaining claims–taking of intangible property and violation of separation of powers–are also without merit. Plaintiffs' vague allegations of a taking of "intangible property" and violation of separation of powers are insufficient to give rise to any liability on the part of Defendants and Plaintiffs have failed to submit evidence to support these allegations. Thus, these claims fail as well.

Accordingly, for the reasons set forth above, the undersigned finds that summary judgment is proper as to all of Plaintiffs' claims.

### B. Plaintiffs' Motion to Dismiss

Plaintiffs seek to dismiss Defendants' affirmative defense of condemnation. Plaintiffs correctly assert that Defendants did not assert condemnation as an affirmative defense in their Answers. However Plaintiffs' assertion that Defendants have argued condemnation in their summary judgment motions as a bar to Plaintiffs' claims is incorrect. Defendants merely assert that the property at issue in this case was demolished during condemnation proceedings. Defendants' argue at summary judgment that Plaintiffs fail to state a claim or create a genuine issue of material fact under the causes of action pleaded in their complaint. Specifically, Defendants argue that any errors committed during the demolition of the subject property do not rise to the level of a federal civil rights violation and are otherwise not the proper subject of federal claims. Accordingly, Plaintiffs' Motion is without merit.

## V. CONCLUSION

For the reasons stated above, it is recommended that the Marion Defendants' Motion for Summary Judgment (Document # 105) be granted, the Mullins Defendants' Motion for Summary Judgment (Document # 106) be granted, and Plaintiffs' Motion to Dismiss (Document # 117) be

denied.[2]

s/Thomas E. Rogers, III<br>Thomas E. Rogers, III<br>United States Magistrate Judge

January 27, 2010
Florence, South Carolina

**The parties are directed to the important notice on the attached page.**

---

[2] If the district judge accepts this recommendation, all other pending motions will be moot except the Marion Defendants' Motion for Sanctions (Document # 140) for the failure of Plaintiffs Donald N. Reaves, Henry O. Reaves, Amanda Reaves Evans, Hercules W. Reaves, and Freddy L. Reaves to appear at their properly noticed depositions. The Response time for this Motion has not yet run and thus the Motion is not ripe for review at this time. Once the Motion is ripe the undersigned will issue a ruling.